**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ALPS ALPINE NORTH AMERICA, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>*Defendants*. | Court No. 26-04994 |

## COMPLAINT

Alps Alpine North America, Inc. ("Plaintiff"), by and through their undersigned counsel, alleges and states as follows:

1. Plaintiff is an importer of record and challenges the assessment of certain tariffs on its imported merchandise.

2. Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA Tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. *See, e.g.*, *Executive Order 14194 of February 1, 2025, Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025); *Executive Order No. 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); *Executive Order No. 14195,*

*Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025); *Executive Order No. 14197, Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 3, 2025); *Executive Order No. 14198, Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 3, 2025); *Executive Order No. 14228, Further Amendment to Duties Addressing the Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 3, 2025); *Executive Order No. 14231, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 6, 2025); *Executive Order No. 14232, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (Mar. 6, 2025); *Executive Order No. 14256, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China as Applied to Low-Value Imports*, 90 Fed. Reg. 14,899 (Apr. 2, 2025); *Executive Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025); *Executive Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 9, 2025); *Executive Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21,831 (May 12, 2025); *Executive Order No. 14316, Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 7, 2025); *Executive Order No. 14326, Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (July 31, 2025).

3. Plaintiff is the importer of record of merchandise that was subject to the IEEPA Tariffs and paid those tariffs on its imports.

4. On February 20, 2026, the Supreme Court of the United States held that the IEEPA Tariffs were contrary to law, reasoning that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

5. The Supreme Court also confirmed that challenges to the IEEPA Tariffs fall "within the exclusive jurisdiction of" the U.S. Court of International Trade ("CIT"). *Id.* at 240 n.1. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of the IEEPA Tariffs paid by importers, including Plaintiff.

6. Since the Supreme Court ruled that the IEEPA Tariffs are unlawful, U.S. Customs and Border Protection ("CBP") has developed a platform on its Automated Commercial Environment ("ACE")—called the Consolidated Administration and Processing of Entries ("CAPE")—for facilitating the administration of claims by importers for refunds of paid IEEPA Tariffs. *See, e.g.*, Declaration of Brandon Lord, *Atmus Filtration, Inc. v. United States*, CIT Case No. 26-01259, ECF No. 31 (Mar. 6, 2026); Declaration of Brandon Lord Responding to March 20, 2026 Court Order, *Atmus Filtration, Inc. v. United States*, CIT Case No. 26-01259, ECF No. 51 (Mar. 31, 2026); Declaration of Brandon Lord Responding to April 8, 2026 Court Order, *Euro-Notions Florida, Inc. v. United States, et al.*, CIT Case No. 25-00595, ECF No. 15 (Apr. 14, 2026).

7. However, Defendants have maintained that CBP lacks the power to order reliquidation (thereby providing refunds) for all entries on which IEEPA Tariffs were paid.

8. Relevant to this Complaint, Defendants' position is that a court order directing the reliquidation of entries, whose liquidation has become final (*i.e.*, liquidated for more than 90 days), would be necessary to provide CBP with the authority to reliquidate finally liquidated entries and thus to provide complete relief to importers—including Plaintiff. *See, e.g.*, Order,

*Princess Awesome, LLC, et al. v. U.S. Customs & Border Prot., et al.*, CIT Case No. 25-00078, ECF No. 25 (July 15, 2026) ("To date, it has been the Government's position that a court order directing the reliquidation of entries, whose liquidation has become final, would be necessary to provide the Government with the authority to reliquidate these finally liquidated entries and thus to provide complete relief to Plaintiffs in the cases.").

9. Thus, this action is necessary so that Plaintiff can obtain a court order directing CBP to reliquidate entries beyond the 90-day period.

10. Through this action, Plaintiff seeks a refund, with interest as provided by law, of all the IEEPA Tariffs deposited on Plaintiff's entries that were subject to the IEEPA Tariffs, and which have not yet been reliquidated.

**PARTIES**

11. Alps Alpine North America, Inc. is a supplier of electronic components and automotive systems. The products that Plaintiff imports – *e.g.*, switches, sensors, actuators, peripheral products, electronic shifters, remote keyless entry systems, touch input panels, data communication modules, and infotainment and audio-visual systems – are supplied to U.S. tier suppliers and original equipment manufacturers ("OEMs") for integration into consumer goods and finished vehicles.

12. Plaintiff, as importer, was required to pay IEEPA duties for imports of these products.

13. Defendant United States received the IEEPA Tariffs deposited by Plaintiff and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i). The actions complained of in this Complaint were undertaken by its agency, Defendant CBP.

14. Defendant CBP is the executive agency, organized under the U.S. Department of Homeland Security, that is responsible for collecting tariffs on goods imported into the United

States. CBP collected the IEEPA Tariff deposits that were deposited by Plaintiff. CBP is headquartered at 1300 Pennsylvania Avenue NW, Washington, DC 20229.

15. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

## JURISDICTION

16. The Court possesses subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, 607 U.S. at 240 n.1.

17. Section 1581(i)(1) of Title 28 of the U.S. Code provides, in relevant part, that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

> . . .
>
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> . . .
>
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph . . . .

28 U.S.C. § 1581(i)(1).

18. Plaintiff's suit arises from the administration, enforcement, and collection of the IEEPA Tariffs, which are "tariffs" and "duties" imposed for reasons other than raising revenue. It also involves the "administration and enforcement" of these matters.

19. This Court has the same powers at law, in equity, and as conferred by statute as a U.S. District Court. *See* 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, this Court can enter a money judgment against the United States and can order any other appropriate civil relief,

including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

**STANDING**

20. Plaintiff has both constitutional and statutory standing.

21. To invoke the jurisdiction of a federal court, a party must meet the case or controversy requirements of Article III of the Constitution. *See* U.S. Const. art. III, § 2, cl. 1; *cf.* 28 U.S.C. § 251 (establishing the CIT as an Article III court).

22. "The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a personal stake in the outcome of the controversy (as) to warrant [its] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-261 (1977) (internal citations and quotations omitted).

23. Plaintiff is the importer of record for goods imported into the United States from countries that were subject to the unlawful IEEPA Tariffs as implemented and collected by Defendants.

24. Plaintiff has suffered an actual, imminent injury that is fairly traceable to the imposition, implementation, administration, and enforcement of the IEEPA Tariffs that can be redressed by an order from this Court directing CBP to reliquidate all of Plaintiff's entries that were subject to the IEEPA Tariffs (for which liquidation has become final) without the IEEPA Tariffs, and to refund the IEEPA Tariffs to Plaintiff, with interest.

25. The IEEPA Tariffs imposed, administered, enforced, and collected by Defendants pursuant to the underlying executive orders adversely affected and aggrieved Plaintiff because Plaintiff was required to pay these unlawful duties.

26. Courts "routinely recognize probable economic injury resulting from [governmental actions] that alter competitive conditions [are] sufficient to satisfy the [Article III injury-in-fact requirement]." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998).

27. Plaintiff is also "adversely affected" and "aggrieved" by the Defendants' imposition, administration, enforcement, and collection of the IEEPA Tariffs within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704, 706. *See* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of [5 U.S.C. § 702].").

28. Defendants have maintained that CBP cannot reliquidate entries for which liquidation has become final (i.e., the entries are beyond the 90-day post liquidation period) absent a court order. *See supra* para. 8.

29. To ensure that Plaintiff obtain the refunds of the IEEPA Tariffs it paid, with interest as provided by law, this legal challenge is necessary.

**TIMELINESS OF THE ACTION**

30. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

31. The instant action is filed within two years of the effective dates of the executive orders imposing IEEPA Tariffs. In the alternative, the instant action is filed within two years of the dates of payments of the IEEPA Tariffs upon entry. This action is therefore timely filed.

**PROCEDURAL AND FACTUAL BACKGROUND**

32. Beginning in February 2025, the President, relying on the IEEPA statute, issued several executive orders imposing tariffs on imported merchandise.

33. On February 1, 2025, the President issued executive orders pursuant to the IEEPA statute assessing IEEPA Tariffs on imported merchandise from the People's Republic of China, Mexico, and Canada (the "Trafficking Tariffs"). *See Executive Order No. 14195 of February 1, 2025, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025); *Executive Order 14194 of February 1, 2025, Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); *Executive Order No. 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

34. On April 2, 2025, the President issued an executive order, pursuant to the IEEPA statute imposing a 10% tariff on imports from nearly every country in the world, and additional tariffs on imports from several countries (the "Reciprocal Tariffs"). *See, e.g.*, *Executive Order No. 14257 of April 2, 2025, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025).

35. President Trump also signed executive orders imposing IEEPA Tariffs on imported merchandise of Brazil and India (the "Brazil/India Tariffs"). *See, e.g.*, *Executive Order 14323 of July 30, 2025, Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Aug. 5, 2025); *Executive Order 14329 of August 6, 2025, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025).

36. After issuing the initial orders underlying the Trafficking Tariffs, the Reciprocal Tariffs, and the Brazil/India Tariffs, Defendants, through executive orders and federal register notices, issued several modifications, updates, and amendments to the IEEPA Tariffs at issue. *See, e.g.*,

*Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11426 (CBP Mar. 6, 2025); *Executive Order No. 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025); *Executive Order No. 14326 of July 31, 2025, Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963 (Aug. 6, 2025); *Notice of Implementation of Additional Duties on Products of India Pursuant to the President's Executive Order 14329, Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 164 (Aug. 27, 2025); *Executive Order 14357 of November 4, 2025, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725 (Nov. 7, 2025); *Executive Order No. 14360 of November 14, 2025, Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54091 (Nov. 25, 2025); *Executive Order 14361 of November 20, 2025, Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54467 (Nov. 26, 2025); *Executive Order 14384 of February 6, 2026, Modifying Duties To Address Threats to the United States by the Government of the Russian Federation*, 91 Fed. Reg. 6501 (Feb. 11, 2026).

37. The executive orders also modified, or directed federal agencies to modify, the Harmonized Tariff Schedule of the United States ("HTSUS") to include the IEEPA Tariffs in various chapter 99 headings.

38. On February 20, 2026, the Supreme Court held that the IEEPA Tariffs were unlawful. *See Learning Resources*, 607 U.S. at 237–55.

39. That same day, the President issued an executive order rescinding the executive orders imposing duties under IEEPA, including the Trafficking Tariffs, the Reciprocal Tariffs, and the Brazil/India Tariffs. *See Executive Order No. 14389 of February 20, 2026, Ending Certain Tariff Actions*, 91 Fed. Reg. 9437 (Feb. 25, 2026).

**CBP'S IMPLEMENTATION OF THE IEEPA TARIFF ORDERS**

40. CBP is charged with the assessment and collection of duties. *See* 19 U.S.C. § 1505.

41. "Liquidation" is defined as "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. *See* 19 U.S.C. § 1505(b).

42. Once liquidation has occurred, CBP can voluntarily reliquidate an entry within 90 days of that liquidation. *See* 19 U.S.C. § 1501.

43. Generally, once 90 days have elapsed following liquidation, CBP deems the liquidation "final."

44. Following the Supreme Court's decision in *Learning Resources*, a three-judge panel of this Court confirmed that the CIT has the authority to order CBP to reliquidate entries subject to the IEEPA Tariffs. *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 813 F. Supp. 3d 1298, 1302–03 (Ct. Int'l Trade 2025).

45. On April 20, 2026, CBP launched the first phase of CAPE to process refunds of certain categories of unliquidated and liquidated entries.

46. On June 29, 2026, CBP launched the second phase of CAPE, which accepted additional categories of entries for refund processing.

47. Neither the first nor second phase of CAPE processed refunds for entries that were "finally" liquidated.

48. On October 6, 2026, CBP launched the third phase of CAPE to process refunds for entries of plaintiffs that were "finally" liquidated. Therefore, it continues to be Defendants' position that a court order directing the reliquidation of entries, whose liquidation has become final, would be necessary to provide the Government with the authority to reliquidate these finally liquidated entries and thus to provide complete relief to plaintiffs in these cases. *See supra* para. 8.

49. On July 15, 2026, this Court issued an order in *Princess Awesome, LLC, et al. v. U.S. Customs & Border Prot., et al.*, CIT Case No. 25-00078, ECF No. 25 (July 15, 2026), ordering CBP to reliquidate, without IEEPA duties, any and all of the plaintiffs' entries that have been liquidated for more than 80 days and on which plaintiffs made estimated deposits pursuant to IEEPA.[1]

50. The Court has begun to issue reliquidation orders in additional cases. *See, e.g.*, Order, *Luxury Brands Holdings Inc. v. United States, et al.*, CIT Case No. 26-00219, ECF No. 10 (July 21, 2026).

51. The developments before this Court following the Supreme Court's decision invalidating IEEPA Tariffs indicate that CBP will not reliquidate entries absent a reliquidation order from this Court.

52. There is no material distinction between the claims raised in the approximately 3,700 IEEPA cases filed before this Court and the claims raised by Plaintiff here. *See, e.g.*, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot. et al.*, No. 25-00255, ECF No. 51, at 2-4 (Ct. Int'l

[1] Although liquidation becomes final 90 days after liquidation, CBP has taken the position that the first phase of CAPE can only process entries that were liquidated 80 days or less prior to the filing of a CAPE declaration. Declaration of Brandon Lord Responding to March 20, 2026 Court Order, *Atmus Filtration, Inc. v. United States*, CIT Case No. 26-01259, ECF No. 51 (Mar. 31, 2026).

Trade July 17, 2026) (omnibus order captioned *In re Tariffs Collected in Reliance on Int'l Emergency Econ. Powers Act (IEEPA)*).

**STATEMENT OF CLAIM**

53. The facts and allegations contained in paragraphs 1 through 52 are restated and incorporated herein by reference.

54. The Supreme Court has found that "IEEPA does not authorize the President to impose tariffs," *Learning Resources*, 607 U.S. at 255, and therefore, the executive orders underlying the IEEPA Tariffs were and are *ultra vires*.

55. This Court is bound by the Supreme Court's decision in *Learning Resources* and should apply that controlling precedent here.

56. Plaintiff paid the IEEPA Tariffs on entries of imported merchandise.

57. Certain entries on which Plaintiff paid the IEEPA Tariffs have liquidated without refund of the IEEPA Tariffs, and more than 90 days have passed since those entries liquidated.

58. This Court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS*, 813 F. Supp. 3d at 1302 (citation and internal quotation marks omitted).

59. The challenged executive orders underlying the IEEPA Tariffs are unlawful as applied to Plaintiff, and Defendants should be ordered to refund all IEEPA duties paid by Plaintiff, together with interest as provided by law.

60. Due process requires that Defendants refund the IEEPA Tariffs that Plaintiff has deposited and that Defendants have unlawfully collected. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36–39 (1990).

61. Because CBP has taken the position that it cannot reliquidate entries that have liquidated more than 90 days ago (i.e., liquidation has become final) without a court order, Plaintiff is

entitled to an order from this Court directing CBP to reliquidate any such finally liquidated entries, and to refund all the IEEPA Tariffs paid by Plaintiff.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court issue an order:

(1) That CBP shall reliquidate, without regard to the IEEPA Tariffs, any and all of Plaintiff's entries for which liquidation has become final, and on which Plaintiff made estimated duty deposits pursuant to IEEPA that have not been refunded, thereby providing CBP with the legal authority to reliquidate Plaintiff's finally liquidated entries pursuant to 19 U.S.C. § 1501;

(2) That Defendants shall refund to Plaintiff any IEEPA Tariff collected from Plaintiff, with interest as provided by law;

(3) Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

(4) Granting such further relief as this Court deems proper.

**/s/ Nancy A. Noonan**
Nancy A. Noonan
Mario A. Torrico

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 857-6479

*Counsel to Plaintiff*

Dated: November 4, 2026